PETER SAMKIWICZ, DEFENDANT IN ERROR, v. THE ATLANTIC CITY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued June 26, 1911—Decided November 20, 1911.

1. It is the duty of every railroad company, controlling a right of way, to provide and keep in repair a safe and sufficient passageway over it, where any public highway shall cross the same, of such width and character as shall be suitable to the locality in which the same is situated, as required by "An act concerning railroads" (Revision of 1903), *Pamph. L.* 1903, *p.* 645, § 26, and when it appears that the edge of a plank used to provide a crossing is so worn as to permit the foot of a person crossing the same to slip between the worn plank and rail, and hold the foot so that it cannot be released by any reasonable effort, in time to avoid injury to it by a train passing along the rail, an inference may be drawn that the crossing was not in good order, and the question whether the company negligently omitted to maintain a safe crossing was one which should be submitted to the jury.

2. It is not a sound legal proposition that the mere attempt of one on foot to cross over a railroad track at a highway crossing when the gates are down, in doing which he is injured, raises a conclusive presumption that "he took all chances of the injury and cannot recover." That the gates are closed is a circumstance to be taken into account in determining whether, under all the facts, he was negligent in not observing the warning thereby conveyed, but it does not conclusively convict him of contributory negligence.

On error to the Atlantic Circuit Court.

For the plaintiff in error, *J. Willard Morgan, Charles V. D. Joline* and *Robert H. McCarter.*

For the defendant in error, *Howard Miller.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff's foot was so crushed by defendant's car that an amputation became necessary, for which he brought suit and recovered damages. The case made by him justified the inference that in attempting to walk over the defendant's railroad at a highway crossing, his foot caught between the planking and the rail of the track, from which he was unable to extricate himself before a freight train, with the motive power at the end of the train farthest from him, was backed against him and his foot cut off; that the planking next to the rail was old, and the edges so worn as to allow plaintiff's foot to slip between the planking and the rail. It also appeared that, although there were gates at the crossing, placed there by the defendant to be lowered when an approaching train intended to cross the highway, they were not lowered at the time the plaintiff undertook to cross the tracks; that no whistle was blown or bell rung to indicate the approach of this train; that when the plaintiff undertook to cross, the train was about a quarter of a mile away from him; that he made every possible effort to loosen his foot as the train was approaching, and in this he was assisted by at least one other person, but their efforts were unavailing, and while the wheels of the first truck passed over his foot, the car was stopped before the wheels of the second truck reached him. With the record in this condition the defendant moved for a nonsuit which the trial court refused, and an exception was taken, upon which is rested the first assignment of error.

While the railroad company has the right, when lawfully authorized, to cross a public highway with its rails, it must so construct its roadbed over the highway as not to unnecessarily interfere with its safe use by the public. *Pennsylvania Railroad Co. v. Matthews,* 7 *Vroom* 531. Planking, or some other efficient material, must be placed between the rails where they cross a public highway, so as to afford to the public a sufficient method by which it may safely cross its rails.

It is the duty of every railroad company, controlling a right of way, to provide and keep in repair a safe and sufficient passageway across it, where any public highway shall cross the same, of such width and character as shall be suitable to the locality in which the same is situated, as required by "An act concerning railroads" (Revision of 1903), *Pamph. L.* 1903, *p.* 645, § 26, and this implies that it be maintained in such condition as to be reasonably safe for public use, and when it appears that the edge of a plank, used to provide a crossing, is so worn as to permit the foot of a person crossing the same to slip between the worn plank and rail and hold the foot so that it cannot be released, by any reasonable effort, in time to avoid injury to it by a train passing along the rail, an inference may be drawn that the crossing was not in good order, and the question whether the company negligently omitted to maintain a safe crossing was one which should be submitted to the jury, and there was no error in the refusal to nonsuit. At the close of the whole case the defendant moved that a verdict be directed for the defendant, but the plaintiff's case was not so shattered by the testimony offered by the defendant as to justify the allowance of this motion. The utmost that can be said regarding defendant's evidence is that it tended to contradict the testimony of plaintiff's witnesses, and therefore to which side credence should be given was essentially a jury question. The plaintiff in error in its brief, on this branch of the case, urges that there should have been binding instructions for the defendant, because Dickinson, one of its witnesses, a civil engineer, testified that the planking was neither old or new; that the opening between the planking and the rail was the regulation opening; that there was some wear to it, but that it was nearly square. In this he was corroborated by two other witnesses. Another witness, Clark, testified that there was a little rounding on the edge of the planking; that it was worn slightly—that is, it was slightly rounded on the edge, and that there was no danger that a person would get his foot caught if he walked straight ahead. The plaintiff's case showed that his foot was caught sidewise between the

rail and the plank, and the defendant urges that this could not have happened if he had walked straight across the track.

We do not think that any conclusive inference of contributory negligence can be drawn from this testimony. The testimony is that the plaintiff was walking straight across, and it is not denied that his foot was caught, and a jury might, we think, fairly find from the evidence that the condition of the planking was such as to throw the foot lengthwise between the defective plank and the rail. We find no error in the refusal to direct a verdict.

The only other assignment of error argued, and that is presented in the supplemental brief for the plaintiff in error, is the seventh. The court was asked to charge, "if the jury believe that he went under the gates after the gates were down, he took all chances of the injury and cannot recover."

This request assumes that in all cases where it appears that a person is injured while undertaking to cross a railroad on a public highway, when the crossing gates are down, a conclusive presumption arises that he is guilty of contributory negligence, and that he takes all the chances of being injured, without considering any other fact pertinent to the issue to be determined. In deciding the legal propriety of a request to charge, its relation to the facts proven in the particular case must be considered. The gates when down give warning that a train is approaching, but if one seeing he has ample time to cross, attempts it, and is prevented by some negligent act of the railroad company from proceeding, so that he cannot escape from the track until he is injured, it could not be said that he was guilty of contributory negligence, for the immediate cause of the injury was the negligent act of the defendant. In the present case, the uncontradicted proof is that plaintiff could have safely crossed but for the alleged negligence of the defendant in not maintaining the crossing in a reasonably safe condition. The request refused eliminates every condition other than that relating to the situation of the gates, and would amount to a direction for defendant if in fact the gates were down when plaintiff undertook to cross the track. In passing upon the question of contributory negli-

gence the jury would have the right to determine whether the plaintiff had acted as a reasonably prudent man should when, as he testifies, the freight train was about a quarter of a mile away at the time, with the engine at the end of the train farthest from plaintiff, a circumstance which led him to think that it was likely to move the other way, and that he could cross in safety if the crossing had been in good condition. The jury could well have inferred, under these and other conditions shown, that the plaintiff was not guilty of contributory negligence. It is not a sound, legal proposition that the mere attempt of one on foot to cross over a railroad track at a highway crossing when the gates are down, in doing which he is injured, raises a conclusive presumption that "he took all chances of the injury and cannot recover." That the gates are closed is a circumstance to be taken into account in determining whether, under all the facts, he was negligent in not observing the warning thereby conveyed, but it does not conclusively convict him of contributory negligence.

In this case, if we assume that the gates were closed, and the plaintiff attempted to cross by going under them, there was no causal connection between the act of the plaintiff and the cause of his injury, which was a defect in the crossing, if it was defective, for his foot would have caught in the same way even if the gates had been open.

"To exonerate defendant from liability for its negligence, which also caused plaintiff's injury, it is not sufficient that plaintiff, by his act contributed thereto, but it must further appear that in doing that act he was at fault and guilty of what the law calls negligence.   *   *   *   In this respect the law exacts such judgment respecting dangers and risks incident to the circumstances as a reasonable man would form, and such vigilance in observing the approach of the danger and such care in avoiding it as a prudent man, reasonably careful of his safety, would exercise." *New York, &c., Railroad Co.* v. *Ball,* 24 *Vroom* 283, 289. But such duty does not extend to dangers from causes *ab extra. Watson* v. *Camden and Atlantic Railroad Co.,* 26 *Id.* 125.

"In the trial of cases of this kind, where it appears that

both parties were in fault, the primary consideration is, whether the faulty act of the plaintiff was so remote from the injury as not to be regarded in a legal sense as a cause of the accident, or whether the injury was proximately due to the plaintiff's negligence as well as to the negligence of the defendant. If the faulty act of the plaintiff simply presents the condition under which the injury was received, and was not in a legal sense a contributory cause thereof, then the sole question will be whether, under the circumstances and in the situation in which the injury was received, it was due to the defendant's negligence." *Menger* v. *Laur*, 26 *Vroom* 205, 216.

The plaintiff in error cites the following cases in support of the request. *Allerton* v. *Boston and Maine Railroad Co.*, 146 *Mass.* 286. In this case plaintiff's intestate, on leaving defendant's train, started to cross the railroad on a public street while the gates were down without looking to see whether any train was approaching on the other track, and she was injured by a train which she could have seen if she had looked. Under these conditions, she would be guilty of negligence in not looking, and the court said, "There was no express or implied invitation to her to cross, nor any excuse for her to cross without looking for the coming train." The fact that the gates were down was an incident tending to show negligence on her part, as it was warning that a train was coming, which emphasized her duty to look for a danger of which she was warned, but it was not held to be conclusive.

In *Cleary* v. *Philadelphia and Reading Railroad Co.*, 140 *Pa. St.* 19, the plaintiff's intestate thought that the gates were down for a particular train to pass on one of the tracks, and while standing on one track, he was struck by a train coming from the opposite direction on another track and killed. The court said, "He stepped in front of a moving train in broad daylight." His negligence was apparent, for the place was a dangerous one of which he was warned by the closed gates.

In *Sheehan* v. *Philadelphia and Reading Railroad Co.*, 166 *Pa. St.* 354, it appears that plaintiff went upon the track in front of an approaching train and was injured. The court

refused to consider his testimony that he stopped, looked and listened, and held that he was guilty of contributory negligence in disregarding the warning and going upon the track in front of an approaching train. The opinion is very brief, and the facts meager, but the case was held to be controlled by *Cleary* v. *Philadelphia and Reading Railroad Co., supra.*

*Wyatt* v. *Great Western Railway Co.,* 118 *E. C. L. Rep.* 709, is also relied upon, but this case has no application, for it is based upon the interpretation given to a statute, which required that gates of a certain character should be kept constantly closed at railway crossings, and to be opened when the circumstances justified it with due regard to safety, and this was held to be a prohibition to the public to pass over the railway except when the gates were open. The facts in this case showed that the gates were closed and the plaintiff, desiring to cross, undertook to open them, when one of them of its own weight flew back and struck his horse, which became unmanageable, and the plaintiff was thrown out of his carriage and injured. The decision for the defendant was put upon the ground that the law prohibited the plaintiff from crossing when the gates were down, intimating that he might have a remedy against the company if it did not open the gates when it should. None of these cases support the claim that one who attempts to cross a railroad when the crossing gates are down assumes all chances of injury, and cannot recover simply because he attempts to cross when the gates are down, in each case there was another element bearing on the question of negligence.

The request was too broad when applied to the evidence in the case and was properly refused.

The result is that the judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 12.

*For reversal*—None.